UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANIEL ANGEL,<br><br>          Plaintiff,<br><br>     v.<br><br>MICHAEL CHERTOFF, in his official capacity, EMILIO T. GONZALEZ, in his official capacity, and CHESTER MOYER, in his official capacity,<br><br>          Defendants. | Case No. 07-cv-168 -JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Doc. 13) and for a declaration from the Court that he is eligible to become a naturalized citizen. Defendants have responded (Doc 18) and filed a cross Motion for Summary Judgment (Doc. 19), to which Plaintiff has responded (Doc. 21).

### BACKGROUND

Plaintiff David Angel (Angel) was born in Mexico.  He entered the United States at the age of 14 and has lived in the U.S. for 30 years.  He was awarded permanent resident alien status in 1989.  In 1993, Angel moved to Effingham, Illinois and opened the El Rancherito restaurant with money he and his wife had saved from years of working in restaurants.  Angel's restaurant was a success, and over the years he has opened more than 20 restaurants throughout central and southern Illinois.  He pays his taxes and employs dozens of workers.  By all accounts he has a

1

stable marriage and home life. His wife is a citizen of the United States, as are his five children.

As regards his businesses, Angel has had some problems with the federal government. In November 2003, Angel and El Rancherito, Inc. entered into a consent agreement with the Department of Labor (DOL) in response to accusations that Angel and El Rancherito, Inc. owed back wages to certain of their workers who had been paid less than minimum wage or had not been paid properly calculated overtime wages.

Additionally, some of El Rancherito, Inc.'s workers were found to have entered the United States illegally and were removed (deported). Twice, the Department of Homeland Security (DHS) brought removal proceedings against Angel and his brother for assisting such illegal immigrants in entering the country. However, both proceedings were dismissed. The first was dismissed without prejudice when DHS admitted it had brought the proceedings improvidently. The second was dismissed with prejudice in a settlement agreement entered into after DHS's only witness affirmatively denied having any knowledge that the Angel brothers knowingly hired or helped smuggle unauthorized aliens.

Angel filed a petition for naturalization on March 31, 2003 with United States Citizenship and Immigration Services (USCIS). In order to be eligible for naturalization, a resident alien must meet certain continuous residency requirements, and show that he is of "good moral character." Angel appeared before a USCIS officer for an initial examination on his application on October 2, 2003 at USCIS's St. Louis sub-office. In response to some of the questions from USCIS's interviewer, Angel requested the presence of counsel. Accordingly, USCIS continued the interview. Despite attempts from Angel's counsel to schedule the follow-

up interview, USCIS did not hold the examination until nearly three years had passed, conducting the interview on September 11, 2006.

In the interim, in July 2004, Angel attempted to enter Mexico from Laredo, Texas. An inspection by United States Customs and Border Protection revealed that Angel had secreted more than $90,000.00 in unreported cash in an ice chest. In July 2006, Angel pled guilty to the offense of failing to file a currency and monetary instrument report in violation of 31 U.S.C. § 5316(a)(1)(B) and § 5322(a). He was fined and sentenced to three years probation.

USCIS denied Angel's application on September 21, 2006, citing 8 C.F.R. 316.10(c)(1), which prohibits USCIS from approving a petition for naturalization while the petitioner remains on probation, although serving a sentence of probation does not preclude a finding that the petitioner is of good moral character. Angel appealed this decision to an immigration hearing officer who, on February 14, 2007, denied Angel's appeal. Having exhausted his administrative remedies, Angel requests the Court review his petition for naturalization *de novo*, as is his right under 8 U.S.C. § 1421.[1]

## ANALYSIS

### I.  Chevron Deference is not Appropriate in § 1421 Setting

There is some conflict among the circuits as to what degree of deference the Court owes USCIS's determination that Angel does not meet (indeed cannot meet during the period of his

---

[1] Angel also asserts that, because he had filed for district court review of his petition under 8 U.S.C. § 1447(b) for failure of USCIS to make a determination in his case within 120 days, USCIS lacked jurisdiction to deny his petition. To date, the Seventh Circuit has not ruled on whether § 1447(b) confers upon the district court exclusive or concurrent jurisdiction. Of the two federal courts of appeal that have reached the question, both have interpreted § 1447(b) as conferring exclusive jurisdiction on the district court. *See United States v. Hovsepian,* 359 F.3d 1144, 1159 (9th Cir. 2004) (en banc); *Etape v. Chertoff*,---F3d—, 2007 WL 2200286 (4th Cir. 2007)  However, as Angel points out in his response brief, whether the Court had concurrent or exclusive jurisdiction under § 1447(b) is academic at this point, as both parties concede that Angel has exhausted his administrative remedies and that the matter is properly before the Court for *de novo* review under 8 U.S.C. § 1421.

probation) the statutory requirement that he be of good moral character.

USCIS submits that its determination should be afforded so-called *Chevron* deference. That is, that when reviewing an agency's construction of a statute which the agency administers, a court must give great deference to the agency's construction of the statute. *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). The Second Circuit has held that *Chevron* deference is appropriate in a § 1421 setting. *See Boatswain v. Gonzales*, 414 F.3d 413 (2d Cir.2005).

However, the Seventh Circuit expressly repudiated the notion that such deference was warranted in a § 1421 setting in *O'Sullivan v. United States Citizenship & Immigration Services*, 453 F.3d 809, 812 (7th Cir. 2006). The statute itself specifically instructs the court to review the claim "*de novo*, and the court shall make its own findings of fact and conclusions of law." 8 U.S.C. § 1421(c).

The Seventh Circuit examined this language:

> Congress specifically calls for de novo review in naturalization cases, while ordering great deference in other immigration contexts. We do not find this to be coincidental. A person who is arguably entitled to be a United States citizen, with all of the privileges citizenship entails, is not rightly at the grace of the Attorney General, as other aliens are often considered to be. Therefore, before denying citizenship and the rights attendant to it, it would stand to reason that the district court should review the Attorney General's decision as if it were reviewing a citizen's claim that the government is unfairly denying him his rights. Section 1421(c) seems to reflect this logic by requiring district courts to make de novo findings of fact and law. We therefore will review O'Sullivan's claim de novo.

*O'Sullivan,* 453 F.3d at 812.

Accordingly, the Court will review Angel's claim for naturalization *de novo*, and will determine whether Angel meets the statutory requirements for naturalization. The court will consider the USCIS regulations, but is not bound by them.

## II.     Probation Does Not Preclude Applicant From Showing Good Moral Character

The Immigration and Naturalization Act (the Act) requires that an applicant be of good moral character, providing:

> No person ... shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the state or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously in the United States from the date of the application up to the time of admission to citizenship, and (3) **during all the periods referred to in this subsection has been and still is a person of good moral character**, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a) (emphasis added).

### A.     Statutory Factors Precluding Showing of Good Moral Character

The Act enumerates certain factors that preclude a finding that the applicant is a person of good moral character:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was-
> (1) a habitual drunkard;
> (2) Repealed...;
> (3) a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D) [regarding prostitution], (6)(E) [regarding smugglers of illegal aliens], and (9)(A) [regarding aliens previously removed] of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;
> (4) one whose income is derived principally from illegal gambling activities;
> (5) one who has been convicted of two or more gambling offenses committed during such period;

> (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;
> (7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;
> (8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).

8 U.S.C.A. § 1101(f). This section of the Act further provides, "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." *Id.*

### B. USCIS Regulation Regarding the Effect of Probation on Showing of Good Moral Character

Angel contends, and USCIS does not dispute, that he is not precluded from establishing good moral character by any of the statutory factors. However, USCIS promulgated a number of regulations to fill in the statutory gap created by the "catch-all" phrase of § 1101(f). At issue here is 8 C.F.R. § 316.10(c)(1) which reads as follows:

> Proof of good moral character in certain cases--
> (1) Effect of probation or parole. An applicant who has been on probation, parole, or suspended sentence during all or part of the statutory period is not thereby precluded from establishing good moral character, but such probation, parole, or suspended sentence may be considered by the Service in determining good moral character. **An application will not be approved until after the probation, parole, or suspended sentence has been completed.**

8 C.F.R. § 316.10 (emphasis added). In other words, because an applicant can still prove his good moral character while on probation or parole, he may be able to meet all the statutory requirements for naturalization set out in the act, but will still be unable to become a naturalized citizen for the duration of his probation or parole.

USCIS urges the Court to adopt its regulation, pointing out that historically probation,

parole, and suspended sentences have been considered in making the good moral character determination for naturalization.  *See e.g., In re McNeil*, 14 F. Supp. 394, 395 (S.D. Cal. 1936); *Petition of Sperduti*, 81 F. Supp. 933 (M.D. Penn. 1949); *In re Bespatow*, 100 F. Supp. 44 (W.D. Penn. 1951); *Petition of Willis*, 100 F. Supp. 337 (E.D. Va. 1951).  Angel counters that such cases stand for the proposition that probation is a factor to be considered in making the good moral character determination, not an additional hurdle to overcome once the good moral character finding has been made.

        C.      **Court's Analysis of the Effect of Probation on Showing of Good Moral Character**

The Court finds that the plain language of the statute clearly sets out both the requirements for naturalization and the only conditions that compel a finding that the applicant cannot meet the good moral character requirement.  Because of the wording of the last sentence, the USCIS regulation at issue here cannot help but be in conflict with one of these two express statutory provisions.

The regulation either purports to add a new category of applicants who are *per se* not of good moral character, i.e. those applicants who are on probation or parole.  Or, the regulation attempts to introduce a new requirement to the statutory requirements for naturalization, i.e. that the applicant complete any term of probation or parole he may be serving before he can be naturalized.  In either case, by promulgating such a regulation, USCIS has exceeded its authority.  Therefore, the Court cannot adopt USCIS's *per se* denial of an application for naturalization by an applicant on parole.  Instead, the Court will follow historical precedent, treating the fact that Angel is currently serving probation as one factor among many in the determination of whether he meets the Act's requirement that he be a person of good moral character.

**III.     Angel Has Established Good Moral Character**

The Court must consider the totality of the circumstances, including a review of the petitioner's life as a whole, when determining if the petitioner meets the good moral character requirement. *Plewa v. I.N.S.*, 77 F. Supp. 2d 905 (N.D. Ill. 1999).  The standard of good moral character in the naturalization context is that the "petitioner's character must measure up to that of the average citizen in the community in which he resides." *Brukiewicz v. Savoretti*, 211 F.2d 541, 543 (5th Cir.1954)."We do not require perfection in our new citizens." *Klig v. U.S.*,  296 F.2d 343, 346 (2nd  Cir. 1961).  Rather, good moral character exists when the petitioner's life as a whole conforms to the generally accepted moral conventions of his time. *Repouille v. United States*, 165 F.2d 152, 153 (2nd Cir. 1947).  The burden is on Angel to show that he meets this requirement, and any doubts are resolved in favor of the United States. *Berenyi v. Dist. Dir., I.N.S.*, 385 U.S. 630, 637 (1967).

The Court finds that Angel has established good moral character.  Angel has lived in the United States for 30 years.  He has a stable marriage and home life.  He has established a thriving business.  He has paid his taxes and there are no indications that any of his sizable income has been illegally acquired.

USCIS never seriously contends that Angel's consent judgment with DOL is an indication that he is not a person of good moral character.  Indeed, the consent judgment was simply a response to a civil lawsuit, and therefore not terribly probative of character.  Furthermore, Angel has respected and complied with the terms of the consent judgment.

Neither does USCIS do more than imply that unproven accusations that Angel had engaged in smuggling aliens into the United States could support a finding that Angel is not a

person of good moral character. Although all doubts must be resolved in favor of the United States, the Court takes to heart the Seventh Circuit's statement that a petitioner for naturalization is "[a] person who is arguably entitled to be a United States citizen, with all of the privileges citizenship entails," *O'Sullivan,* 453 F.3d at 812, and will not, in a determination as important and profound as this one, accept as fact mere suspicions.

On the other hand, the Court must consider the fact that Angel is on probation, as well as the underlying conduct that gave rise to the probation. The crime to which Angel pled guilty, failure to file currency and monetary instrument report in violation of 31 U.S.C. 5316(a)(1)(B) is not a crime involving "moral turpitude." *See United States v. Bajakajian*, 524 U.S. 321, 351 (1998). However, any unlawful act, even one not involving moral turpitude, reflects adversely on a petitioner's moral character. As USCIS points out, unlawful acts not involving moral turpitude coupled with failure to accept responsibility for or failure to disclose such acts have repeatedly resulted in findings that the petitioners involved lacked good moral characters. *See e.g., Rico v. INS*, 262 F. Supp. 2d 6, 10-11 (E.D.N.Y. 2003), *Le v. Elwood*, 2003 WL 21250632 (E.D. Pa. 2003) (unreported), *Meyersiek v. USCIS*, 445 F.Supp.2d 202 (D.R.I. 2006).

However, here, while Angel certainly acted unlawfully, he pled guilty to the reporting violation, thereby taking responsibility for it. Furthermore he apparently never attempted to conceal the conviction from USCIS. Additionally, the Court notes that while the reporting violation is punishable by fine of up to $250,000.00 and imprisonment of up to five years, Angel was required to pay only a $6,000.00 fine and was sentenced to 120 hours of community service and a three year term of probation. Apparently, then, the sentencing court and prosecution were satisfied that he had accepted responsibility for his unlawful action in a timely and sincere

9

manner.

Finally, USCIS rightly points out that Angel must still satisfactorily explain away his unlawful actions by showing extenuating circumstances. Angel contends that he was unaware of the reporting requirements of 31 U.S.C. § 5316 (a)(1)(B), that he had acquired the money legally and paid the proper amount of income tax on it, that he thought that cash would be simpler and cheaper to exchange in Mexico than checks or wire transfers, and that he had planned to use the money to buy a new car for his extended family in Mexico as well as to host a large baptismal party for his infant son.

The Court notes that Angel's explanation was apparently satisfactory to the sentencing court in his criminal case, as well as to U.S. Customs and Border Protection which cited Angel's explanation in its decision to return $87,591.00 of the previously forfeited currency. Following their lead, the Court is satisfied that Angel has shown extenuating circumstances for the reporting violation.

In any case, the reporting violation is the only criminal mark on Angel's record in his 30 years in the United States. Accordingly, the Court finds that, having weighed all the factors, Angel has established that he is a person of good moral character. As Angel has established that he meets the other requirements of 8 U.S.C. § 1427(a), the Court finds that he meets all the requirements necessary to qualify for American citizenship.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Doc. 13) and declares that he is eligible to become a naturalized citizen of the United

States of America.  The Court **DENIES** Defendant's Cross Motion for Summary Judgment

(Doc. 19).

**IT IS SO ORDERED.**

**DATED: October 22, 2007**

s/ J. Phil Gilbert<br>**J. PHIL GILBERT**<br>**DISTRICT JUDGE**